# Stewart's Admr. v. Ohio River Contract Co., et al.

(Decided December 12, 1912.)

## Appeal from Estill Circuit Court.

Master and Servant.—Where an experienced servant, while rowing a boat, pulled it too close to the revolving wheel of a steamer, thereby causing it to upset, resulting in his death, the master cannot be held liable for the failure of his foreman, who was in the boat, to warn or instruct the servant of the danger, when the evidence shows that the foreman did not know anything about rowing the boat or give any instructions as to how it should be rowed or the course which should be taken, and the accident happened too quick to be averted by a warning.

W. H. LILLY, GRANT E. LILLY and CLARENCE MILLER for appellant.

JOUETT & JOUETT and RIDDELL & FRIEND for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

This action was brought by the administrator of Elisha Stewart against the Ohio River Contract Company, R. J. Armstrong, Robert Vandevender and George Koehler, to recover damages for the death of Stewart, who was drowned while attempting to cross the Kentucky River in a small boat. At the time of his death Stewart was between fifteen and sixteen years old and was engaged as a day laborer by the contract company. Vandevender was the foreman of the company in charge of a crew of men, of whom Stewart was one, and Koehler was the owner of a small gasoline boat with which the boat Stewart was rowing at the time of his death came in contact.

The petition averred that his death was caused by the joint and several negligence of the defendants. The action was dismissed as to R. J. Armstrong, and the record shows that a general demurrer of George Koehler to the petition was sustained, with leave to amend, and thereupon the plaintiff filed an amended petition against Koehler in which he averred, in substance, that when the boat being rowed by Stewart came near the gasoline boat owned and operated by Koehler, the stern-wheel of the gasoline boat was in rapid motion but Koehler did not, by himself or employes, keep a look-out to avoid injury to other craft using the river, al-

though he knew that Stewart and his companions were in a small rowboat and that this boat was close to his and that he negligently and carelessly failed to keep a lookout for the boat rowed by Stewart and negligently failed to stop the wheel of his boat in time to avert the danger to the small boat, which was struck by the revolving wheel. To this amended petition a demurrer was also sustained, and, declining to plead further, the petition against Koehler as amended was dismissed, to which execption was taken.

After this the case went to trial before a jury, and upon conclusion of the evidence for the plaintiff, the trial court directed the jury to return a verdict in favor of the defendants, Vandevender and the contract company. The correctness of this ruling is the only question before us on this appeal as we do not understand counsel to complain of the ruling sustaining the demurrer.

The evidence shows that Stewart, at the time of his death, was an intelligent and able-bodied boy, between fifteen and sixteen years old, and that he had been working for the contract company as a laborer, getting a man's wages, for about four months before his death. The contract company was engaged in building a dam for the United States Government on the Kentucky River, and on the day of the accident Stewart and other employes of the contract company under Vandevender as foreman were working on the south side of the river. At noon on this day several of the laborers, together with Stewart and Vandevender, crossed the river in a "John boat" for the purpose of eating dinner on the north side of the river. While they were engaged in eating dinner a fleet of logs, about 300 feet long and some 40 feet wide, passed through the lock and was stationed in the river opposite the point where the men were eating their dinner and between them and the place at which they worked on the south side. After they had finished their dinner they started back to their work, and to avoid lifting the "John boat," which was attached to the north bank, across the fleet of logs, they concluded to row it down the north bank to the end of the fleet and thence across the river.

At this time the fleet was stationary in the river, one end of it being attached by a cable to the lock through which it had just passed, and at the other end of the fleet, around which the laborers had to go in their little

boat, there was a stern-wheel gasoline boat in charge of Koehler. For the purpose of giving the laborers space in which to row their boat down the north bank to the end of the fleet, Koehler, with his gasoline boat, which was attached to the end of the fleet, pushed it out from the north bank, and Stewart and his companions started in the "John boat" down the river, between the north bank and fleet, for the purpose of crossing the river when they reached the end of the fleet.

Stewart was seated near the center of the boat, rowing it, with his back to the prow, and facing Curt Edwards. Jim Stewart was in the prow of the boat, and Robert Vandevender was in the stern.

All of the witnesses testify that Stewart rowed down alongside the fleet, and when a few feet below the gasoline boat, turned to go across the river. After the turn was made, or when it was being made, the revolving stern-wheel of the gasoline boat struck the "John boat," causing it to sink. When this occurred Stewart and some of the others jumped into the river, and Stewart was drowned.

The uncontradicted evidence shows that Stewart was used to the river, in the habit of rowing this boat, and was fully competent to manage it. It is also shown, without contradiction, that when he undertook to row the boat across the river, as he had been accustomed to doing, he did so without instruction or direction from Vandevender or any one else. There is really no conflict in the evidence except on one point, and that is, whether the wheel of the gasoline boat was suddenly started when the "John boat" came close to it on its way across the river, or whether it was revolving from the time the "John boat" started. One witness testified that when the "John boat" made a turn to go across the river the wheel of the gasoline boat, which had been stopped, suddenly commenced revolving, and its revolutions drew the "John boat" under the wheel. Other witnesses say that the wheel of the gasoline boat was revolving before the "John boat" made the turn to go across the river.

There is no evidence whatever tending to show that Koehler was guilty of any negligence, and it is clear that the pleadings did not state any cause of action against him, but counsel contend that the case should be reversed as to the contract company and Vandevender, upon the ground that the contract company, as princi-

pal, and Vandevender, as its agent and foreman in control of Stewart, were guilty of negligence in permitting Stewart to row the boat, and in failing to warn him of the danger of going too close to the wheel of the gasoline boat, or coming in contact with it.

As before stated, Stewart, in rowing the boat, had his back to the gasoline boat, while Vandevender, who was seated in the stern of the "John boat," had his face to it, but there is no evidence that Vandevender directed or requested Stewart, in any manner or form, to row the boat, or gave him any instructions whatever as to the manner in which it should be rowed, although he did tell the men to get ready to go across the river when the dinner hour was over.

All the evidence shows that Stewart was an experienced oarsman, accustomed to the river and to the use of this boat, and that he had been in the habit of rowing the men across the river in it, and so the course of the boat and the rowing of it was left entirely to Stewart. Nor is there any evidence that Vandevender knew anything about rowing a boat or had any experience with oars.

If, as some of the witnesses say, the wheel of the gasoline boat was stopped when Stewart made the turn to go across the river and it was suddenly started just as the "John boat" went by it, it can easily be understood how the accident happened, as Stewart, although he may have known he was going too close to the wheel if the wheel had been revolving, did not anticipate any danger from it when it was stopped. On the other hand, if, as some of the witnesses say, the wheel of the gasoline boat was revolving all the time, the accident can only be accounted for upon the theory that Stewart carelessly pulled the "John boat" too close to the revolving wheel. But whichever one of these theories is correct, no blame can be attached to Vandevender or the contract company. Stewart was the sole responsible agent for the accident, which was due to the fact that Stewart let the boat get too close to the wheel of the gasoline boat.

Nor can it be said that Vandevender, who had no experience in rowing boats, was negligent in failing to instruct or warn Stewart, who was a skillful oarsman. Stewart must have known the exact location of the gasoline boat and the danger that would follow if he rowed too close to it, so that there was no occasion why Van-

devender should have given Stewart any instruction or warning.

It is said, however, that the position of Vandevender in the boat gave him a clear and full view of the situation, and that it was his duty, if he saw, or by the exercise of ordinary care could have seen, Stewart about to go into a place of danger, to give him warning. The trouble with this theory is that there is no evidence that Vandevender or any one else knew or could have known by the exercise of ordinary care, that Stewart was going to put himself in danger until it was too late to avert it by warning. The whole thing happened in a moment, and from a careful reading of the record we cannot escape the conclusion that the accident was due entirely to Stewart's thoughtless or careless act in rowing too close to the wheel of the gasoline boat, unless it be, as suggested, that the wheel was suddenly started.

We find no evidence in the record that would justify us in applying the well established rule governing the duty of a master to warn and instruct the servant, or to exercise care to prevent him from needlessly or recklessly placing himself in a place of danger.

The judgment is affirmed.